UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT OWENSBORO

**MICHAEL DEWAYNE PADGETT**                                                  **PLAINTIFF**

v.                                            **CIVIL ACTION NO. 4:14CV-P33-JHM**

**CHAD PAYNE**                                                    **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

On initial review of the complaint and its amendment pursuant to 28 U.S.C. § 1915A, the Court allowed *pro se* Plaintiff Michael Dewayne Padgett's Eighth Amendment excessive-force claim arising out of a February 9, 2014, incident to proceed against Defendant Chad Payne in his individual capacity for damages (DN 7). Now before the Court is Defendant Payne's motion for summary judgment (DN 22). Plaintiff filed a response (DN 25) and exhibits in support thereof (DN 30), and Defendant filed a reply (DN 27). For the reasons that follow, Defendant's motion will be granted.

**I. LEGAL STANDARD**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely "show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252. "[T]he mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996), *abrogated on other grounds by Lewis v. Humboldt Acquisition Corp., Inc.*, 681 F.3d 312 (6th Cir. 2012). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## II. ANALYSIS

In the complaint (DN 1), Plaintiff alleged that on February 9, 2014, while incarcerated at the Daviess County Detention Center (DCDC), Defendant Payne "willingly assaulted me in the Face with his Fist" and that there was "swelling on my left cheek right Below my left eye." He

claimed that he was refused "a 1983 Form, and phone calls with My Lawyer untill shipped to prison, on Thursday, Febuary 13th and Tuesday Febuary 11th" and that a copy of the video of the assault was given to the State Police and the Daviess County Prosecutor. In the amendment (DN 9) to the complaint, Plaintiff alleged that the video and a written report showed as follows:

> I was secured in The emergency Restraint chair Before i was Assaulted By corporl Chad Pa[yne]. And Then Tased. This chair Includes Belly Strapes, Feet Straps and My Hands were handcuffed Behind by Back, I was Also Being held around my Neck/head were it was hard to Breath, which would and did retain me From any kind of Retaliation.

In the motion for summary judgment, Defendant argues that Plaintiff abandoned the action; that Plaintiff failed to exhaust available administrative remedies; and that Defendant is entitled to qualified immunity. Because the Court concludes that Plaintiff failed to exhaust his excessive-force claim, the Court will not consider the other arguments.

The Prison Litigation Reform Act (PLRA) is applicable to this case as it applies to suits by prisoners concerning prison conditions. The PLRA states, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has explained, "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion of all administrative remedies is mandatory, and the remedies provided need not meet federal standards or be plain, speedy and effective. *Id.* at 524. Even if the relief sought is not available, exhaustion is still required. *Id.*; *see also Woodford v. Ngo*, 548 U.S. 81, 85 (2006) ("[A] prisoner must now exhaust administrative remedies even where the relief sought-monetary damages-

3

cannot be granted by the administrative process[.]"). One purpose of the exhaustion requirement is to give prison officials an opportunity to take corrective action and eliminate the need for a lawsuit. *Porter v. Nussle*, 534 U.S. at 525. Prisoners are no longer required to demonstrate exhaustion in their complaints. *Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of establishing. *Id.*

Finally, an inmate's case may be dismissed for failure to exhaust where it is shown that the inmate did not "properly" exhaust. *Woodford v. Ngo*, 548 U.S. 81, 93-95 (2006). To "properly" exhaust means that the inmate "'complete[d] the administrative review process in accordance with the applicable procedural rules,' rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. at 218 (quoting *Woodford v. Ngo*, 548 U.S. at 88). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.*

Defendant bears the burden of proof on the issue of exhaustion. "'[W]here the moving party has the burden-the plaintiff on a claim for relief or the defendant on an affirmative defense-his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party.'" *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. Schwarzer, *Summary Judgment Under The Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). "Summary judgment is appropriate only if defendants establish the absence of a 'genuine dispute as to any material fact' regarding non-exhaustion." *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011) (citing Fed. R. Civ. P. 56(a)).

In support of his argument that Plaintiff failed to exhaust available administrative remedies, Defendant Payne attaches the affidavit of Major Kenneth Ehlschide, a command staff officer at the DCDC (DN 22, Aff.).  Major Ehlschide avers that at all times material to this action DCDC had a grievance procedure in place and that Plaintiff "filed no grievances related to any of the claims he asserts in this action." *Id.*

Major Ehlschide attached two DCDC grievance procedures to his affidavit (DN 22, Aff., Exs. A & B).  The first procedure pursuant to "501 KAR 3:140" provides, in pertinent part, as follows:

> Inmates wishing to file a grievance must use the following procedure:
> 1. Attempt to solve the problem though verbal communication with the person believed to be responsible for the condition.
> 2. If that person does not solve the issue, then the grievance process may be initiated.
> 3. Inmates shall be able to file their grievances in a secure and confidential manner without a threat of retaliation.
> 4. All inmates shall have equal access to the grievance system.
> 5. Grievance process shall be readily available to all inmates.
> 6. Send your grievance to "Grievance" on kiosk within 48 hours of the incident following the on screen instructions of the kiosk.
>    a. There is no time limit to submitted a grievance regarding an allegation of sexual abuse.
>    b. Nothing in the section shall restrict the DCDC's ability to defend against an inmate lawsuit on the ground that the applicable statute of limitations has expired.
> 7. The grievance officer shall have ten business days from the date sent to conduct an investigation and respond to the grievance.
>    . . . .
> 9. [T]he inmate may appeal his/her grievance to the jailer. This appeal must occur within 48 hours of receipt by the inmate of the initial response . . . .

(DN 22, Ex. A).

5

Major Ehlschide explains that the DCDC "uses a computer KIOSK system to allow inmates to request information, ask questions, or file medical requests or grievances." To his affidavit, he attaches a copy of the "Resident Request Report" for Plaintiff for the time period of June 20, 2013, through September 19, 2014 (DN 22, Ex. C), which reveals that Plaintiff used the KIOSK on five occasions between the date of the assault on February 9, 2014, through February 18, 2014,[1] the date Plaintiff was transferred away from the DCDC. On none of the five occasions did Plaintiff request a grievance form or complain about Defendant Payne's alleged actions during the February 9, 2014, incident in question.

As to the second grievance procedure, to his affidavit, Major Ehlschide also attaches an "inmate rights document [that] sets out the grievance process to be followed by an inmate at the [DCDC] who desires to file a grievance regarding his or her conditions of confinement" (DN 22, Aff., Ex. B). The process provides that an inmate shall "[a]ttempt to solve the problem through verbal communication with the person believed to be responsible for the condition"; "[i]f that person does not solve the issue, then a Grievance Form may be requested"; and "[c]omplete and submit a Grievance Form to the captain within five calendar days of the incident." *Id.* Thereafter, if an inmate is dissatisfied with the captain's decision or does not receive a response within ten business days, the inmate may appeal to the jailer within five calendar days. *Id.* The jailer or designee shall have ten business days to conduct an investigation and respond to the appeal. *Id.*

---

[1] Review of Plaintiff's Resident Request Report reveals that Plaintiff used the KIOSK on the following five dates between the date of the assault and his transfer and for the following purposes: on February 11, 2014, Plaintiff indicated, "I need a 1983 form I feel my rights have been violated as a state inmate"; on February 13, 2014, he indicated, "I need 2 1983 forms Im not being allowed to call my attorney now and Ive reported the assault to my paid lawyef Jessica she told me to place a follow up call to her and Im being restricted from calling my lawyer"; on February 14, 2014, he indicated, "I need my shock probation packet Im up for shock probation as of the 12th of dis month"; on February 16, 2014, he indicated, "I need a probation packet"; and on February 17, 2014, he indicated, "Captain Lshawde are U still going to talk to me today I really need to speak with U??"

6

Defendant has submitted evidence showing that Plaintiff filed no grievance related to the excessive-force claim asserted in this action, despite having ample opportunity to do so. The Court concludes that Defendant has satisfied his burden of proving that Plaintiff failed to exhaust his available administrative remedies.

"A prisoner's lack of compliance may be excused if the administrative remedies are not available, but [the Sixth Circuit] has required a prisoner to make 'affirmative efforts to comply with the administrative procedures before analyzing whether the facility rendered these remedies unavailable.'" *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015) (quoting *Napier v. Laurel Cty.*, 636 F.3d 218, 223 (6th Cir. 2011)). In his unverified response (DN 25) to the summary-judgment motion, Plaintiff admits that he did not file a grievance. He contends:

> My faliuer to use the Greivance perseduer is not my fault. After the Incident i was kept away from a Greivance I was only aloud to come out of my cell once a week for a shower i was even refused my hour of rec I was Transferred to the Dapartment of Corrections and There i requested a Greivance and a 1983 Form i was told a Grevriance at There facility couldn't be used on a County Jail, So I filed the lawsuit. I even stated my rights to File a greivance was violated when i filled out my Complaint. I Shouldn't be held accountable for the Jails actions.

Plaintiff's allegation that he "was kept away from a Greivance" is belied by the Resident Request Report submitted by Defendant showing that Plaintiff was able to use the KIOSK five times between the date of the incident on February 9, 2014, until his transfer on February 18, 2014, but failed to file a grievance on the incident or request a grievance form by way of the KIOSK. Plaintiff also never alleges that he requested a grievance form by any other means from anyone at DCDC. Further, contrary to Plaintiff's assertion that "I even stated my rights to File a greivance was violated when i filled out my Complaint," neither the complaint nor its amendment supports this unsworn assertion. Finally, as to Plaintiff's unverified allegation that he requested a grievance at the facility to which he was transferred, the first grievance procedure

7

required the issue be submitted via KIOSK within 48 hours of the incident, and the second procedure required the grievance form to be submitted within five calendar days of the incident. Plaintiff was transferred outside of both time limits and therefore had the opportunity to comply with the grievance procedures. *Surles v. Andison*, 678 F.3d 452, 455 (6th Cir. 2012) ("A prisoner must adhere to any time limitations that are part of the institutional grievance policy.") (citing *Risher*, 639 F.3d at 240).

Plaintiff fails to provide any verified statements or any documentation demonstrating that he made an affirmative effort to comply with the administrative procedures available at the DCDC. The Court, therefore, finds that Plaintiff has failed to establish a genuine issue of material fact as to his failure to exhaust.

### III. ORDER

For the foregoing reasons, Defendant Payne is entitled to summary judgment.

**IT IS THEREFORE ORDERED** that the motion for summary judgment (DN 22) is **GRANTED** and that the excessive-force claim against Defendant Payne is **DISMISSED**.

A separate Judgment will be entered.

Date: March 25, 2016

*[signature: Joseph H. McKinley]*

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

cc: Plaintiff, *pro se*
    Counsel of Record
4414.005